**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID JAMES RICE,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 2:17-CV-0890-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 9 and 10), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' brief on the merits (Docs. 17 and 20).

      The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

/ / /

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 25, 2014. <u>See</u> CAR 18.[1] In the application, plaintiff claims disability began on March 1, 2009. <u>See id.</u> In his opening brief, plaintiff describes the nature of his disability as follows:

> At the time of hearing. . ., Mr. Rice was 43 years old. He had a history of methamphetamine use and it was likely then that he contracted Hepatitis B. Mr. Rice got clean and in 2007 began work as a counselor's aid at Cornerstone Recovery. While working at Cornerstone, Mr. Rice was in a motorcycle accident which, inter alia, badly damaged his right knee, requiring surgeries to repair the ACL and both meniscus. AR 47. After Cornerstone closed in 2008, Mr. Rice was unable to work due to increasing back and knee pain; he received unemployment for several years and then subsisted on General Assistance. AR 25. He then filed a claim for Title XVI benefits.

Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 16, 2015, before Administrative Law Judge (ALJ) Carol L. Buck. In a November 6, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): back pain secondary to degenerative disc disease;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: medium work except: the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand and walk for 6 hours in an 8-hour workday; and never climb ladders, ropes and scaffolds but occasionally stoop and crouch and frequently climb ramps and stairs, balance, kneel and crawl;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

<u>See id.</u> at 18-28.

After the Appeals Council declined review on February 22, 2017, this appeal followed.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on April 12, 2018 (Doc. 13), and the Supplemental Administrative Transcript (SAT) lodged on May 2, 2018 (Doc. 15).

# III. DISCUSSION

In his brief, plaintiff argues: (1) the ALJ erred in finding plaintiff's hepatitis B, right hip, right knee, and left ankle impairments are non-severe; (2) the ALJ erred by failing to consider whether plaintiff's impairments satisfy Listing 1.02 for hip, knee, and ankle dysfunction and 5.05 for chronic liver disease; (3) the ALJ erred with respect to evaluation of the medical opinions; (4) the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's statements and testimony; (5) the ALJ failed to develop the record; and (6) the ALJ's vocational finding is based on the vocational expert's response to flawed hypothetical questions.

## A. **Severity of Impairments**

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

/ / /

/ / /

---

[2]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1        1.     The ALJ's Analysis

At Step 2, the ALJ concluded plaintiff's back pain secondary to degenerative disc disease is a severe impairment. See CAR 20. Regarding impairments found not to be severe, the ALJ stated:

> The claimant alleges right hip pain, right knee pain, left ankle pain, chronic hepatitis B and polysubstance abuse in remission. At the hearing, the claimant testified he worked as a drug counselor once he quit drugs and got himself better. The claimant testified he was given Flexeril by his doctor but does not try to take it due to his past drug use but does use medical marijuana about 2-3 times a day so that he does not have to take pain medications. The claimant testified he had a substance abuse problem with crystal meth but has not used drugs or abused alcohol since February 2014. The claimant testified he is unable to work due to worsening of his right knee pain from past surgeries on both his knees in 2007 for torn ACL and meniscus and has problems with his legs giving out on him. The claimant testified he has ankle pain from past surgeries but was used to the pain in his feet and his right hip pain causes the right side of his hip to be constantly numb. The claimant testified he has hepatitis B with fatigue, uneasy stomach, and weird color stools (Hearing Testimony, 09/16/2015).
>
> A review of the Shasta Community Health Center records pertaining to the claimant's right knee, right hip, hepatitis B and polysubstance abuse in remission stated the following: the 03/07/2014 the record stated the claimant reported right knee and hip pain in the lateral right leg for the past 6 week[s], wary of narcotics due to his drug addict past and being a drug counselor, and hepatitis B carrier (Exhibit 1F/5, 7, 3F/9-10). On 04/08/2014, the claimant reported increased pain on his right hip with burning, numbness, joint pain and tingling but the March 2014 right hip x-ray was essentially negative right hip and pelvis and his physical examination was within normal limits (Exhibit 1F/10, 3F/6, 14-15). The 08/26/2014 record stated the claimant was an active carrier of hepatitis B, denied drug use except for marijuana that he had a prescription for, and continues to smoke cigarettes because his mother enables him despite being counseled on smoking cessation (Exhibit 5F/9-10). On 08/21/2015, the claimant reported he was a still a heavy tobacco smoker, smokes a pack a day, and tried to quit was relapsed due to passive exposure and was counseled about smoking cessation (Exhibit 7F/6-7).
>
> During the April 2014 examination, Dr. Kyle examined the claimant and diagnosed him with right knee degenerative joint disease, left ankle degenerative joint disease, and chronic hepatitis B (Exhibit 4F/8). The claimant reported he has pain in his feet, ankles and knees and sharp pain in his right hip (Exhibit 4F/4). The claimant reported he had right knee ACL repair but has ongoing degenerative joint disease in that knee; chronic hepatitis B with fatigue and weakness; and prior drug addiction with methamphetamine and occasional IV drug use (Exhibit 4F/4). During the physical examination of the claimant's lower extremities, Dr. Kyle found the claimant's right knee had some discomfort to manipulation, tenderness over the trochanteric area, mild crepitus, slight medial joint line tenderness, and stable stress testing; left knee showed

very slight crepitus but no deformity and no pain to manipulation; right ankle had discomfort to inversion but able to invert approximately 5 degrees and no palpable deformity; and feel [sic] had no significant deformities, no amputations of the toes, and no obvious callous formation, ulceration or hallux valgus deformities (Exhibit 4F/6-7). Overall, Dr. Kyle found the claimant's review of systems was unremarkable; his physical examination of his skin, lymphatic, HEENT, neck, chest, lungs, cardiovascular, musculoskeletal (upper extremities), cervical spine, hands, and feet were within normal limits; and neurological examination showed his motor examination revealed normal muscle tone and bulk, essentially normal strength and grip strength in all the muscle groups of the upper and lower extremities at 5/5, normal peripheral pulses, reflexes were 2+, no evidence of incoordination with intact cerebellar testing and negative Romberg, sensory was grossly intact to light touch and monofilament testing in the upper and lower extremities, and normal gait (Exhibit 4F/5-8).

Since the claimant's Title 16 application date of February 25, 2015, the overall minimal and sporadic medical records consist of the claimant's subjective complaints and are devoid of any complaints, treatments, medications or medical imageries related to claimant's allegations of right hip pain, right knee pain, left ankle pain, chronic hepatitis B and polysubstance abuse in remission (Exhibit 1F, 3F, *SF,* 7F). After a review of the medical opinions and the minimal and sporadic treatment records, the undersigned finds the claimant's allegations of right hip pain, right knee pain, left ankle pain, chronic hepatitis B and polysubstance abuse in remission are not "severe" impairments because they do not limit his ability to do basic work activities.

CAR 21-22.

2.     Plaintiff's Contentions

According to plaintiff.

At step two the ALJ must determine whether any of the claimant's alleged impairments are "severe." 20 C.F.R. § 404.1520(c). A work-related limitation is severe "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.1987). Here, the ALJ characterized as severe Mr. Rice's back pain secondary to degenerative disc disease but characterized as "non-severe" Mr. Rice's right hip pain, right knee pain, left ankle pain and Chronic Hepatitis B.

Information from Mr. Rice's treating physicians alone suffices to establish that each of the "non-severe" impairments separately had more than "slight or minimal" effect. Indeed, even the consultative examiner, Dr. Kyle, expressly stated Mr. Rice's activities will be limited by spondylosis, degenerative joint disease of the right knee and left ankle and chronic Hepatitis B. AR 314. So too, the medical record reviewers, Drs. Hannah and Clancy, agreed Mr. Rice's Hepatitis B was "severe." See, AR 69, 80. In short, the ALJs characterization of the back, knee, ankle and hepatitis as "non-severe" is contrary to the opinion of every single medical professional. The ALJ's characterization of these impairments as "non-severe," accordingly, was clear error.

7

1    3.    Disposition

2         Regarding right hip pain, right knee pain, left ankle pain, and chronic hepatitis B,

3    while plaintiff has summarized the doctor's findings, he has not identified specific work-related

4    limitations associated with these impairments.  At Step 2, plaintiff bears the burden of

5    establishing an impairment that has more than a minimal effect on his ability to work.  See SSR

6    85-12; Yuckert, 841 F.3d at 306; see also 20 C.F.R. §§ 404.1508, 416.908.  Because plaintiff has

7    failed to identify specific work-related limitations with respect to right hip pain, right knee pain,

8    left ankle pain, and chronic hepatitis B, the court finds no error in the ALJ's severity

9    determination.[3]

10   **B.    Listings 1.02 and 5.05**

11        The Social Security Regulations "Listing of Impairments" is comprised of

12   impairments to fifteen categories of body systems that are severe enough to preclude a person

13   from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

14   C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they

15   are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing,

16   all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

17   1985).

18        At Step 3, the ALJ concluded plaintiff's severe impairment (back pain) did not

19   meet or medically equal the severity of any impairment listed in the regulations.  See CAR 22.

20   The ALJ stated:

21        Although the claimant has "severe" physical impairments, objective
             findings and functional limitations do not meet the criteria of any listed
22        impairments described in Appendix 1 of the Regulations (20 CFR,
             Subpart P, Appendix 1; listing sections 1.00, 1.04).  No treating or
23        examining physician has mentioned findings equivalent in severity to the
             criteria of any listed impairment, nor does the evidence show medical
24        findings that are the same or equivalent to those of any listed impairment
             of the Listing of Impairments.
25

26        Id.

27   ⎯⎯⎯⎯⎯⎯⎯⎯
         [3]    To the extent plaintiff argues the ALJ erred with respect to evaluation of the
28   medical opinions concerning limitations associated with these impairments, those arguments are
     addressed below.

                                                    8

Plaintiff argues:

> As discussed above, the ALJ erroneously characterized as "non-severe" Mr. Rice's right hip pain, right knee pain, left ankle pain and Chronic Hepatitis B. In her step three analysis, ALJ Buck only referenced Listing 1.04, spinal disorders. However, Listing 1.02 is applicable to hip, knee and ankle dysfunction and Listing 5.05 is applicable to Chronic Liver disease. The ALJ should have considered the applicability of these listings and should also whether any or all of these impairments collectively met or equaled the criteria of any Listing.

The premise of plaintiff's argument is that the ALJ erred at Step 3 regarding application of the Listings because the ALJ erred at Step 2 regarding the severity of plaintiff's impairments, specifically his right hip pain, right knee pain, left ankle pain, and chronic hepatitis B. As discussed above, the court concludes the ALJ did not err at Step 2. Plaintiff's argument at Step 3 is therefore unpersuasive. Because the ALJ did not err in finding plaintiff's right hip pain, right knee pain, left ankle pain, and chronic hepatitis B non-severe, it was not necessary for the ALJ to consider at Step 3 whether these impairments are presumptively disabling.

## C.   **Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec.

1 Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants

2 also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

3 Opinions from "other sources" such as nurse practitioners, physician assistants, and social

4 workers may be discounted provided the ALJ provides reasons germane to each source for doing

5 so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

6 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

7 when opinions from "other sources" may be considered acceptable medical opinions).

8 The weight given to medical opinions depends in part on whether they are

9 proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d

10 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating

11 professional, who has a greater opportunity to know and observe the patient as an individual, than

12 the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

13 Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the

14 opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

15 Cir. 1990).

16 In addition to considering its source, to evaluate whether the Commissioner

17 properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

18 the record; and (2) clinical findings support the opinions. The Commissioner may reject an

19 uncontradicted opinion of a treating or examining medical professional only for "clear and

20 convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

21 While a treating professional's opinion generally is accorded superior weight, if it is contradicted

22 by an examining professional's opinion which is supported by different independent clinical

23 findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035,

24 1041 (9th Cir. 1995).

25 A contradicted opinion of a treating or examining professional may be rejected

26 only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d

27 at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the

28 facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

also Magallanes, 881 F.2d at 751.

### 1. The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinions to determine plaintiff's residual

functional capacity.  See CAR 23-24.  Regarding the medical opinions, the ALJ stated:

> The State agency non-examining physician, S. Hanna, M.D. opined the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours in an 8- hour workday; frequently balance and occasionally climb, stoop, kneel, crouch and crawl; should avoid concentrated exposure to extreme cold and hazards such as machinery and heights; and had no manipulative, visual or communicative limitations (Exhibit 1A/7-9). The regulatory requirements of 20 CFR 416.967 state that if a person can perform medium level work, then light and sedentary level work can also be performed. Good weight is given to Dr. Hanna's opinion because it was consistent with the overall medical records.

> The State agency non-examining physician, S. Clancey, M.D. opined the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk and sit for 6 hours in an 8- hour workday; frequently balance, kneel, crawl and occasionally climb, stoop and crouch; and had no manipulative, visual, communicative or environmental limitations (Exhibit 3A/6-7). Great weight is given to Dr. Clancey's opinion because it was based on his review of the medical records and his opinion was consistent and supported by the overall medical records.

> The consultative physician, David Kyle, D.O. examined the claimant and diagnosed him with spondylosis of the low back and back pain (Exhibit 4F/8). The claimant reported he has history of spondylosis in the spine that was severe and continues to have pain in his low back (Exhibit 4F/4). During the physical examination, Dr. Kyle found the claimant had positive straight leg raising in the supine bilaterally and his overall physical examination was within normal limits (Exhibit 4F/5-7). Dr. Kyle opined the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for 6 hours in an 8-hour workday; sit without restrictions; occasionally climb ramps, stairs, ladders, ropes and scaffolds and frequently balance, stoop, kneel crouch and crawl; and had

11

no manipulative, visual, communicative or environmental limitations (Exhibit 4F/8-9). Great weight is given to Dr. Kyle's opinion because it is substantially consistent with Dr. Clancey's opinion and based on his direct examination, observation and objective findings.

The claimant's treating physician, Douglas McMullin, M.D. diagnosed the claimant with chronic back and leg pain with limited range of motion of the lumbar spine with flexion and extension, bilateral ankle swelling and tenderness, antalgic movement with sitting, standing and walking, halting gait due to pain, and bilateral quad atrophy but his respiratory and cardiovascular were unremarkable, abdominal was normal, and reflexes, sensory and motor examinations were within normal limits (Exhibit 2F, 6F/2). Dr. McMullin opined the claimant can sit for 6 hours in an 8- hour workday and needed to change positions every 30 minutes; stand and walk for less than two hours and needed to change positions every 10 minutes; would need hourly unscheduled breaks for 10 minutes at a time; and would be absent from work about one day a month due to his impairments (Exhibit 6F). The regulatory requirements of 20 CFR 416.967 state that if a person can perform medium level work, then light and sedentary level work can also be performed. Although Dr. McMullin is a treating source, only some weight is given to this opinion because it was solely based on the claimant's subjective complaints and not supported or consistent with his longitudinal treatment records consisting on normal examinations and objective findings on 03/07/2014 and 04/08/2014 (Exhibit 1F, 3F, 5F).

CAR 23-24.

2.     Plaintiff's Contentions

Plaintiff first argues the ALJ erred by ignoring opinions offered by treating physician, Dr. Monie. According to plaintiff:

> Dr. Monie's treatment notes identify abduction and adduction limitations laterally over Mr. Rice's right hip. AR 279. These objective medical findings support Mr. Rice's testimony regarding pain and limitations. Dr. Monie also diagnosed Mr. Rice with Hepatitis B, confirmed by lab testing. AR 285. Completely undiscussed, Dr. Monie's findings must be deemed uncontradicted and the failure to discuss Dr. Monie's findings error. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007); see *Garrison*, 759 F.3d at 1012-13 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." (internal citation omitted)); *Marsh v. Colvin*, 792 F.3d 1170, 1171-72 (9th Cir. 2015) (finding that an ALJ erred by not mentioning a treating provider's opinion that communicated a diagnosis, subjective symptoms, and observations about the claimant's abilities); see, *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("We hold that the ALJ erred because he neither explicitly rejected the [treating physician's opinion], nor set forth specific, legitimate reasons for crediting [the non-examining physician] over [the treating physician].").

///

12

Plaintiff further contends the ALJ erred by failing to provide adequate reasons for giving only some weight to the opinions of treating physician, Dr. McMullin.  Plaintiff argues:

> Dr. McMullin diagnosed Mr. Rice with Chronic Hepatitis B as well as chronic back and leg pain, limited range of motion, bilateral ankle swelling and antalgic movement. AR 274, 290, 304-306. Dr. McMullin's Treating Medical Source Statement dated November 14, 2014 identifies the following limitations:
>
> (1) maximum 6 hours sitting in an 8-hour day, 30 minutes of sitting before changing position;
> (2) less than 2 hours standing in an 8-hour day, 10 minutes standing before changing position;
> (3) less than 2 hours walking in an 8-hour day, 10 minutes walking before changing position;
> (4) hourly unscheduled breaks of 10 minutes; and
> (5) an average of one day per month absent from work due to disability-related limitations. AR 331-32.
>
> The ALJ asserted, "only some weight is given to this opinion because it was solely based on the claimant's subjective complaints and not supported or consistent with his longitudinal treatment records consisting on normal examinations and objective findings on 03/07/2014 and 04/08/2014 (Exhibit lF, 3F, 5F)." AR 24. The assertion, however, is contrary to the record, and the ALJ's discounting of Dr. McMullin's opinions contrary to law.
>
> The ALJ committed numerous errors in her analysis of Dr. McMullin's opinions, including at least two threshold errors. First, in giving "some weight" to Dr. McMullin's opinions, the ALJ failed to identify which portions of Dr. McMullin's opinion she credited and which portions she did not making meaningful review difficult if not impossible. See *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)(failure of ALJ to provide reasons will usually not be harmless error because the reviewing court cannot speculate as to the grounds for the ALJ's conclusion) Second, the ALJ only asserted that Dr. McMullin's opinions in the Source Statement were inconsistent with two out of a multitude of treatment notes; did not claim that Dr. McMullin's opinions were contrary to those of any other acceptable medical source; and did not cite even one scintilla of evidence from any other medical source (footnote omitted) when she 'explained' her basis for only granting Dr. McMullin's opinions "some weight." Thus, the opinions of Dr. McMullin must be considered uncontradicted on the record and those opinions must be controlling unless the ALJ provided "clear and convincing reasons supported by substantial evidence in the record" (*Ryan, supra*, 528 F.3d at 1198) for disregarding those opinions. Cherry-picking two normal exams is insufficient (even if the characterization were accurate which it is not). So too, the ALJ's rationale cannot survive even under the far more lenient standard of "specific and legitimate reasons" (*Lester v. Chater, supra*, 81 F.3d at 830-31). The ALJ's proffered 'reasons' for according Dr. McMullin's opinions are neither "clear and convincing" nor "specific and legitimate" and they are decidedly not supported by anything like substantial evidence in the record.

/ / /

13

Turning to the grounds advanced by the ALJ, Dr. Mullins [sic] opinions were not "solely based on [Mr. Rice's] subjective complaints;" as the ALJ asserts. Dr. McMillen's Treating Medical Source Statement expressly states (AR 331) that the limitations identified are based on back x-rays. AR 276. In addition, Dr. McMullin repeatedly noted his personal observation of antalgic gait. AR 274, 290, 304-306. Similarly, Dr. McMullin's diagnosis of Hepatitis B was based on the February 13, 2014 blood work which specifically found the presence of Hepatitis B surface antibodies and Hepatitis B surface antigens. AR 285. It was reversible for the ALJ to misstate competent evidence to justify her decision. *Gallant v. Heckler*, 753 F. 2d 1450, 1456 (9th Cir. 1984), citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982).

Moreover, ALJ Buck's assertion that Dr. McMullin's diagnoses and opinions were not consistent with the longitudinal treatment record is simply inaccurate. The ALJ pointed to only two medical records as supposedly inconsistent with the opinions in the Source Statement: the notes of March 7, 2014 and the notes of April 8, 2014, which the ALJ claimed (see, AR 24) reflected "normal examinations and objective findings." (footnote omitted). This is false. The March 7, 2014 treatment notes identify "antalgic gait and movements" and expressly state that Mr. Rice's "Baseline lumbar disc disease should qualify him for disability SSI" (AR 274). The April 18, 2014 treatment notes recite Dr. McMullin's observation of "truncal ataxia, antalgic maneuvers." AR 305. Based on these observations and the March 4, 2014 x-rays, Dr. McMullin diagnosed Mr. Rice's back pains as the product of "diffuse arthritic and disc atrophic changes" AR 305. Simply put, the two treatment records identified by the ALJ do not in any manner reflect "normal examinations and objective findings"; those examination findings and diagnoses identify specific medical conditions as causing Mr. Rice's back pain and resulting work-related limitations. Simply stated, the treatment notes cited by ALJ Buck are entirely consistent with the limitations expressed in Dr. McMullin's Treating Medical Source Statement. Again, it was reversible error for the ALJ to misstate evidence to justify her decision. Gallant v. Heckler, supra, 753 F. 2d at 1456.

Next, plaintiff argues the ALJ erred by accepting the opinions of examining physician, Dr. Kyle. According to plaintiff:

In his report of examination, Dr. Kyle diagnosed Mr. Rice as suffering from: "spondylosis, degenerative disc disease, degenerative joint disease in both knees, medial tenderness of right knee." AR 310. Dr. Kyle identified the following conditions that would "limit [Mr. Rice's] activities": spondylosis of the low back, right knee - degenerative joint disease, left ankle - degenerative joint disease and Chronic Hepatitis B (AR 314). Dr. Kyle opined that Mr. Rice could lift 50 pounds occasionally and 25 pounds frequently, unlimited pushing or pulling, six hours standing or walking, sitting without need for altering positions or moving, occasional climbing of ramps and stairs, frequent balancing, stooping and kneeling, unlimited reaching. Gross and fine manipulation. (AR 314-15). The ALJ accorded "great weight" to Dr. Kyle's opinion: "because it is substantially consistent with [non-treating, non-examining] Dr. Clancey's opinion and based on his direct examination, observation and objective findings." AR 24.

14

Before turning to the specific infirmities in Dr. Kyle's opinions, and the improper weight accorded them by ALJ Buck, there is a striking peripheral fact which must be noted. Disability proceedings generally follow a wearisomely familiar path: (1) treating physicians identify serious physical maladies that result in severe limitations on a claimant's ability to work; (2) so-called independent medical evaluators perform cursory physical examinations, review a small fraction of the available medical records and axiomatically conclude that the claimant suffers from no limitations whatsoever; and (3) non-treating, non-examining state agency physicians uncritically adopt the conclusions of the IME. Such was not the case here: non-treating, non-examining state agency physician "S. Hanna" characterized Dr. Kyle's findings as "a bit optimistic when compared to totality of evidence" (AR 69) and both Dr. Hanna and Dr. Clancy characterized Dr. Kyle's findings as "too optimistic" (AR 70, 81) and while Dr. Hanna while both Dr.s [sic] tried to 'soften the blow' by stating that "great weight given to findings on exam" (AR 70) she nonetheless concluded that Mr. Rice had much more severe limitations on his work-related abilities than those claimed by Dr. Kyle. It is notable that in according "great weight" to Dr. Kyle's findings, ALJ Buck cited Dr. Clancy's uncritical adoption of Dr. Kyle's findings but made absolutely no reference to the characterization by both Dr's. Hannah and Clancy of Dr. Kyle's findings as "too optimistic" and made absolutely no reference to Dr. Hanna's sharply different findings regarding limitations. The fact that two state agency physicians characterized an examining physician's opinion as "too optimistic" is, in and of itself, so unusual that it should have raised red flags with the ALJ and prompted something more than boilerplate adoption of his opinions.

Above and beyond the state agency physicians' politely phrased criticism of Dr. Kyle's opinion, Dr. Kyle's report is rife with unexplained and utterly unjustifiable internal contradictions. Dr. Kyle identified numerous disabilities that would, in Dr. Kyle's express opinion, impose limitations on Mr. Rice's abilities to work: spondylosis of the low back, previous ACL and meniscus repairs to the right knee, crepitus in both knees, degenerative joint disease of the right knee, degenerative joint disease of the left ankle and Chronic Hepatitis B. AR 314. Dr. Kyle made absolutely no attempt whatsoever to reconcile his identification of these significant medical impairments with his determination that, for all practical purposes, Mr. Kyle had no significant work-related physical limitations. The illogic of these inconsistencies, and Dr. Kyle's failure to even attempt to reconcile them, is alone, sufficient grounds to assign no weight whatsoever to his opinions. This conclusion is buttressed by the fact that Dr. Kyle's findings of no limitations are contrary to all the objective medical evidence, including back x-rays, repeated observations of antalgic gait by both of Mr. Rice's primary care physicians, Drs. McMullin and Monie, and blood tests confirming Chronic Hepatitis B. (footnote omitted).

For all of these reasons, the ALJ's granting of "great weight" to Dr. Kyle's report and findings was error; Dr. Kyle's report is internally inconsistent, objectively illogical and contrary to all of the medical evidence in the record. Dr. Kyle's report should not simply be held to be unworthy of "great weight;" it should expressly be held to be worthy of no weight whatsoever.

///

Finally, plaintiff argues the ALJ erred by giving disparate weight to the opinions of agency non-examining physicians, Drs. Clancey and Hanna:

> Again, the state agency reviewing physician at the initial level, Dr. Hanna, repeatedly characterized Dr. Kyle's findings as too "optimistic" and concluded that Mr. Rice had serious across-the-board physical limitations. In contrast, the state agency reviewing physician at the reconsideration level, Dr. Clancy, uncritically, unhesitatingly and wholeheartedly adopted Dr. Kyle's report and recommendations verbatim. ALJ Buck accorded "good weight" to Dr. Hanna's opinions, but accorded "great weight" to Dr. Clancy's opinions. A review of ALJ Buck's rationale for the disparate weights she accorded the respective opinions of these two state agency physicians makes painfully evident that this disparate treatment had no legitimate objective basis but was instead an attempt to limit the damage to Dr. Kyle's opinions caused by a state agency physician's rejection of the untenable results of Dr. Kyle's results-oriented examination and report.
>
> The wording of the rationales offered by ALJ Buck for the disparate weight she accorded the two state agency physicians is notable: the ALJ stated that "Good weight is given to Dr. Hanna's [May 5, 2014] opinion because it was consistent with the overall medical records" (AR 23) and "Great weight [is given to] Dr. Clancey's [June 3, 2014] opinion because it was based on his review of the medical records and his opinion was consistent and supported by the overall medical records." AR 24. The ALJ's implication that Dr. Clancy reviewed medical records but Dr. Hanna did not is factually inaccurate: a review of the respective evidence of record indices shows [sic] that Drs. Hanna and Clancy reviewed the same medical records. Compare AR 65-67 (Evidence of Record-Hannah) with AR 77-79 (Evidence of Record-Clancy). In truth, Dr. Hannah reviewed and commented on the back x-rays which were the primary objective evidence cited by Dr. McMullin in his Source Statement, whereas Dr. Clancy made absolutely no reference to back x-rays. Compare AR 80 (Clancy – hip x-ray) with AR 68 (Hanna – back x-ray). In addition, it is Dr. Hanna's opinions that are consistent with the medical record (specifically Dr. McMillen's findings) and Dr. Clancy's opinions that are inconsistent with the medical record. Under the rationale advanced by the ALJ, Dr. Hanna should have been assigned great credibility and Dr. Clancy who should have been assigned, at best, good credibility. The fact that the ALJ assigned the opposite weights is yet another instance of the ALJ improperly. I can "reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result." *Gallant v. Heckler*, supra, 753 F. 2d at 1456.

### 3.    Disposition

#### a.    Dr. Monie

Citing the record at CAR 279, plaintiff states: "Dr. Monie's treatment notes identify abduction and adduction limitations laterally over Mr. Rice's right hip." Plaintiff contends the ALJ erred by failing to discuss these limitations identified by Dr. Monie. The court has examined the cited record, which consists of routine treatment notes, and finds no reference to

16

any opinions expressed by Dr. Monie regarding work-related limitations associated with plaintiff's right hip impairment. Plaintiff cites no other portions of the record in support of his contention the ALJ erred by ignoring opinions rendered by Dr. Monie. Because Dr. Monie did not render any opinions regarding functional limitations associated with plaintiff's right hip impairment, plaintiff's argument is unpersuasive.

b. Dr. McMullin

The ALJ gave Dr. McMullin's opinions only "some weight," finding them to be based largely on subjective complaints and inconsistent with the doctor's own normal objective findings. See CAR 24. First, plaintiff argues the ALJ erred as a matter of law by giving the doctor's opinion only "some weight" but failing to specify which portions of the doctor's opinions were given more weight and which were given less weight and why. Second, plaintiff argues the ALJ erred because, contrary to this finding, Dr. McMullin noted significant objective findings to support his opinions other than the two specific examinations cited by the ALJ. According to plaintiff, the ALJ "cherry-picked" from the evidence by citing to only two isolated portions of Dr. McMullin's treatment record. Finally, plaintiff contends, also contrary to the ALJ's characterization, the two cited records do not show normal objective findings.

Plaintiff's first argument is unpersuasive because it is clear from the totality and context of the ALJ's decision how the ALJ weighed Dr. McMullin's opinions. Dr. McMullin opined as to abilities consistent with less than medium work, the exertion level plaintiff was found capable of performing by the ALJ. In assessing Dr. McMullin's opinions, the ALJ noted: "The regulatory requirements of 20 CFR 416.967 state that if a person can perform medium level work, then light and sedentary level work can also be performed." From this, the court is satisfied the ALJ weighed Dr. McMullin's opinion and accepted them to the extent Dr. McMullin opined plaintiff in fact has work-related limitations, just not to the level as would preclude work at the moderate exertional level.

/ / /

/ / /

/ / /

17

Plaintiff's second argument is unpersuasive because plaintiff fails to point to objective evidence noted by Dr. McMullin on occasions other than those specifically noted by the ALJ. Plaintiff has simply not established the ALJ engaged in "cherry-picking" of the evidence to support her evaluation of Dr. McMullin's opinions.

Turning to plaintiff's third argument, the ALJ supported her conclusion Dr. McMullin's opinions are not supported by objective evidence by citation to examinations performed by Dr. McMullin on March 7, 2014, and April 8, 2014. See CAR 24 (citing Exhibits 1F, 2F, and 5F). The ALJ characterized these as "consisting of normal examinations and objective findings." See id. The court finds no error because the ALJ's characterization of the record is accurate.

The March 7, 2014, examination is documented in a treatment note prepared by Dr. McMullin in which he notes minimal, if any, objective findings consistent with the limitations opined by the doctor. See CAR 274-75 (Exhibit 1F). Though Dr. McMullin noted decreased range of the lumbar spine, on examination the doctor also noted normal balance and gait. See id. at 274. Moreover, while the doctor stated plaintiff's condition at the time "should qualify him for disability SSI," Dr. McMullin nonetheless stated plaintiff had the potential to return to less than heavy work. Id. The doctor's opinion on a legal issue reserved for the Commissioner – whether plaintiff would at the time of the March 2014 examination have been considered disabled – is of no consequence and, in any event, fails to meet the 12-month duration requirement to support a finding of disability. Otherwise, the objective findings documented at the March 2014 is, as the ALJ stated, normal.

The April 8, 2014, examination is documented in a treatment note prepared by Dr. McMullin who again reports minimal, if any, significant objective findings. See CAR 304-306 (Exhibit 3F); 321-323 (Exhibit 5F). In particular, Dr. McMullin noted "tender lumbar pain" with normal balance and gait as well as "Sensory – Normal" and "Motor – Normal." Id. at 305. Dr. McMullin recommended plaintiff swim laps three times per week with a goal to increase to ten laps three to four times per week. See id. As with the March 2014 examination, the ALJ accurately characterized this examination as revealing normal findings.

18

The court finds no error with respect to the ALJ's evaluation of Dr. McMullin's opinions.

    c. <u>Dr. Kyle</u>

   The ALJ gave Dr. Kyle's opinions great weight, accepting the doctor's conclusion plaintiff can perform the exertional demands of medium work. <u>See</u> CAR 24. Plaintiff contends the ALJ erred in relying on Dr. Kyle's opinion because "Dr. Kyle's report is internally inconsistent, objectively illogical and contrary to all of the medical evidence in the record." According to plaintiff, the doctor's opinion plaintiff can perform medium work is inconsistent with Dr. Kyle's acknowledgement of numerous significant diagnoses.

   The court does not agree. Dr. Kyle performed a consultative physical examination on April 26, 2014, and prepared a report. <u>See</u> CAR 309-316 (Exhibit 4F). The report reflects Dr. Kyle conducted numerous tests on physical examination and noted largely unremarkable objective findings. <u>See id.</u> Contrary to plaintiff's characterization of Dr. Kyle's report, the doctor did not render any specific diagnoses. Rather, the doctor listed plaintiff's allegations of spondylosis of the low back and back pain, right knee problems, left ankle problems, and hepatitis B. <u>See id.</u> at 314. Dr. Kyle concluded all of these impairments would "limit the claimant's activities." <u>Id.</u> Elsewhere in his report. Dr. Kyle explains those specific limitations which are consistent with an ability to perform medium work. <u>See id.</u> at 315. There is nothing internally inconsistent, illogical, or contrary in Dr. Kyle's report. Indeed, the doctor's report logically explains plaintiff has various impairments and then provides specific opinions on functional limitations related to those impairments. Plaintiff's disagreement with the doctor's conclusion does not render it illogical or inconsistent.

    d. <u>Drs. Clancey and Hanna</u>

   Drs. Clancey and Hanna, who are agency reviewing consultants, rendered opinions regarding plaintiff's residual functional capacity. <u>See</u> CAR 70-72 (Exhibit 1A); 81-82 (Exhibit 3A). Dr. Hanna opined on May 9, 2014, plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently. <u>See</u> CAR 70-71 (Exhibit 1A). Dr. Clancey opined on June 23, 2014, plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently. <u>See</u> CAR 81

(Exhibit 3A).  Both doctors opined plaintiff can sit/stand/walk for six hours in an eight-hour day as well as frequently balance.  See CAR 71; 81.  Both doctors also agreed plaintiff can occasionally climb, stoop, and crouch.  See id.  Dr. Hanna opined plaintiff can only occasionally kneel and crawl, see CAR 71, but Dr. Clancey opined plaintiff can frequently engage in those activities, see CAR 81.  The ALJ gave Dr. Hanna's opinion "good weight" and Dr. Clancey's opinion "great weight."  CAR 23-24.

Plaintiff argues the ALJ improperly assigned Dr. Hanna's more limiting opinion less weight in an effort to "limit the damage" done by Dr. Hanna's statement Dr. Kyle's opinion is "too optimistic."  The court finds no merit in this argument.  While Dr. Hanna felt Dr. Kyle's opinion may be too optimistic, Dr. Clancey did not agree and opined consistent with the limitations found by Dr. Kyle.  The ALJ was entitled to resolve this conflict.  See Andrews, 53 F.3d at 1041.  Dr. Kyle's opinion – offered after performing an examination – constitutes substantial evidence supporting the ALJ's decision to assign Dr. Clancey's opinion more weight than Dr. Hanna's similar but somewhat more limiting opinion.

### D.      Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Heller</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)); <u>see also</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); <u>Fair</u>, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." <u>Fair</u>, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

> ### 1. The ALJ's Analysis

At Step 4, the ALJ also evaluated plaintiff's statements and testimony. <u>See</u> CAR 23, 24-26. The ALJ stated:

> The claimant alleges he has back pain secondary to degenerative disc disease of the lumbar spine. Because of his impairments, the claimant is unable to work. The claimant testified he cannot work due to his back pain because there are days when he is unable to get himself out of bed and unable to sit for extended periods of time. The claimant testified his back pain is constant, uses heat 2-3 times a day, sit for 20 minutes before he has to move around, stand for 3 minutes, and walk for 1/4 of a mile or 10 minutes. The claimant testified he has good and bad days, one bad a week where he is unable to get out of a chair or bed due to the severe back pain, and his back pain is in the lower back above his buttocks with spasms. The claimant testified his back pain goes down the backside of his right leg and he sits in a recliner chair all day long to lie down and relax his back. The claimant testified his back pain has been staying the same since 2009 and was recommended surgery that he opted against. The claimant is able to perform activities of daily living such as get himself up in the mornings, make coffee, watch TV, eat when he is hungry, visit or talk with his mother, and his mother helps with shopping and laundry (Exhibit 4E; Hearing Testimony, 09/16/2015).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

22

these symptoms are not entirely credible for the reasons explained in this decision.

* * *

Based on the review of the evidence above, the undersigned finds that the claimant's account of the severity of symptoms, as well as her allegations regarding functional limitations, are not fully credible for the following reasons:

In regards to claimant's physical impairments described above, the medical records are inconsistent with claimant's allegations. The claimant alleges that since his Title 16 application date of February 25, 2014 his back pain has worsened; however, a review of the minimal and sporadic medical records do not support claimant's allegations of worsening of his physical impairments. The March 2014 lumbar spine x-ray showed minimal to mild findings without any worsening. The overall minimal and sporadic medical records consisted of three visits in 2014 and two visits in 2015 that showed the claimant underwent treatments for his back with minimal pain medications, failed to attend physical therapy, and his physical examinations were within normal limits. The overall minimal and sporadic records for do not support the claimant's allegations of worsening of his back pain (Exhibit 1F, 3F, 5F, 7F).

Shasta Community Health Center records consists of three visits in 2014 and two visits in 2015 (Exhibit 1F, 3F, 5F, 7F). The 03/07/2014 record stated the claimant has a long-term history of low back pain (Exhibit 1F/5, 7, 3F/9). The record stated the claimant had the potential to work again as a D&A counselor without any heavy lifting and bending (Exhibit 1F/7, 3F/10). On 04/08/2014, the claimant reported middle and lower back pain due to being in a motor vehicle accident several years ago and wanted to get his SSI paperwork completed due to his inability to work due to his low back pain (Exhibit 3F/ 14). The claimant's examination showed he was tender in his lower lumbar spine but the remainder of his physical examination was within normal limits (Exhibit 3F/ 15). The record stated the claimant was recommended to swim laps for 3 weeks and then gradually increase to 10 laps for 3-4 times a week (Exhibit 3F/ 15). On 08/26/2014, the claimant reported pain in his middle back and lower back with trouble sitting for long periods of time and his back will start to lock up if he does not get up, needed his GA forms completed, and thought he would benefit from physical therapy (Exhibit 5F/9). The record stated the claimant was able to walk up and down the stairs, hop on the exam table, rise from sitting positions and gait was normal (Exhibit SF/IO). The record stated the claimant's musculoskeletal exam was normal with normal gait and he was referred to physical therapy for his chronic back pain (Exhibit 5F/10, 12).

The 02/19/2015 record stated the claimant was here for GA forms, but had not been seen at the clinic in a while, and unable to exercise or go to physical therapy due to his back pain. The record stated the claimant reported hot baths and Flexeril were beneficial for the claimant's back pain but he did not request any refills for Flexeril. The record stated the claimant lost his job at Cornerstone Recovery Services in 2008 when it went under, got unemployment for two years but did not pursue job finding at that time and now he reported that his back pain got worse and

worse without any specific injuries to his back since he was laid off and he denied any radiation down his legs or buttock or any paresthesia (Exhibit 5F/5). The claimant's physical examination was within normal limits except his back had right lumbar paraspinal tenderness to palpation but no lumbar vertebral point tenderness (Exhibit 5F/6). The record stated the claimant was recommended to do daily stretching, take Flexeril, and daily baths (Exhibit 5F/7). On 08/21/2015, the claimant was requesting the completing of his GA form because he was unable to work due to back pain and had last worked in 2009 at a drug rehabilitation center (Exhibit 7F/5). The record stated the claimant's physical examination was within normal limits and the claimant was counseled on the importance of physical activity (Exhibit 7F/6-7).

During the April 2014 examination, Dr. Kyle observed the claimant was neat and clean in appearance and he ambulated with normal gait (Exhibit 4F/5, 8). Dr. Kyle found the claimant's review of systems was unremarkable and the physical examination of his skin, lymphatic, HEENT, neck, chest, lungs, cardiovascular, musculoskeletal (upper and lower extremities), cervical spine, hands, and feet were within normal limits (Exhibit 4F/5-7). During the physical examination of the claimant's thoracolumbar spine, Dr. Kyle founds [sic] no evidence of increased muscle tone or spasms; no evidence of significant kyphosis, lordosis or noticeable scoliosis; and range of motion demonstrated no discernable limitations in any plane of flexion, extension, rotation and lateral flexion (Exhibit 4F/7). Further, Dr. Kyle found the claimant's motor examination revealed normal muscle tone and bulk, essentially normal strength and grip strength in all the muscle groups of the upper and lower extremities at 5/5, normal peripheral pulses, reflexes were 2+, no evidence of incoordination with intact cerebellar testing and negative Romberg, and sensory was grossly intact to light touch and monofilament testing in the upper and lower extremities (Exhibit 4F/7-8). Dr. Kyle opined that the claimant can sit without restrictions and outside of the normal breaks, he did not need to periodically alternate sitting or standing to relieve pain/discomfort (Exhibit 4F/9).

The overall medical treatment records, medical imagery and testing, medication effectiveness, and claimant's testimony challenge a finding that the claimant is completely credible and show that his physical impairments are not as limiting and debilitating as he alleges. The treatment records are sporadic and minimal and showed stable objective findings and normal physical examinations of the claimant's back pain, and the March 2014 lumbar spine x-ray showed minimal findings without any worsening. The claimant is still able to perform the medium exertional work with the non-exertional limitations described above.

In sum, the above residual functional capacity assessment is supported by the medical opinion evidence, objective medical findings, the State agency, and the record as a whole. The State agency sources and medical records found that the claimant is capable of performing light exertional work with the following non-exertional limitations discussed above. Therefore, it is found that the claimant has the residual functional capacity to perform medium exertional work with non-exertional limitations as described above.

Id.

## 2. Plaintiff's Contentions

Plaintiff argues:

At hearing, Mr. Rice testified about the surgical procedures to repair his ACL and two torn meniscus, he testified as to his knee pain, his constant back pain radiating into his right leg, the numbness in his right hip, his inability to sit or stand for more than 20 minutes, his need to spend close to half of each day reclined, his inability to climb stairs, the fact that he couldn't walk more than a quarter of a mile at a time, but "only if [he] had to" and even that would take him 10 minutes (roughly 1/3 the walking speed of an average adult). He testified to the ankle pain he has incident to the surgeries that repaired his two club feet. He also testified that, as a consequence of his Hepatitis B he is frequently lethargic and unable to even get out of bed at least one day a week.

If an ALJ elects to discount the credibility of a claimant's testimony or intensity of symptoms, the ALJ must provide clear and convincing reasons supported by substantial evidence in the record. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), quoting Lester, supra 81 F.3d at 834. In the case at bar, the ALJ's discussion of claimant credibility begins with the statement that:
Based on the review of the evidence above, the undersigned finds that the claimant's account of the severity of symptoms, as well as her allegations regarding functional limitations, are not fully credible for the following reasons: AR 24.

The ALJ's use of the incorrect gender pronoun in her introductory comments on credibility is not a promising start, and the sustainability of the ALJ's findings goes rapidly downhill from there.

There are two generalized defects, each of which is sufficient to reverse. First, the ALJ committed reversible error by failing to identify what specific testimony she credits and what specific testimony she does not credit. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) Second, to the extent the ALJ cites "lF, 3F, 5F, 7F" as a supposedly contradictory evidence, an undifferentiated en masse reference to 56 pages of medical records is not specific. Id.

However, the most troubling aspect of the ALJ's credibility determination is that when she does cite to specific evidence, she baldly misstates and/or mischaracterizes it. A few examples suffice:

1. The ALJ claimed that: "medical records do not support claimant's allegations of worsening of his physical impairments. The March 2014 lumbar spine x-ray showed minimal to mild findings without any worsening." AR 24. In truth, the x-ray report (AR 276) not only makes no mention of "worsening,", it expressly states that there were "no comparisons" (i.e., no prior radiological studies) so there is no possible way that Dr. Wyatt could have stated that there was "no worsening."

2. The ALJ cited "Exhibit lF/7" as support for her claim that: "The record stated the claimant had the potential to work again as a D&A counselor without any heavy lifting and bending." AR 25. In truth, "Exhibit 1F/7" (AR 274) makes no mention of Mr. Rice working as a drug and alcohol counselor and in fact

25

expressly states Dr. McMullin's opinion that: "Baseline lumbar disc disease should qualify him for disability SSI."

3. The ALJ cites one treatment note, "Exhibit 5F/10" (AR 326) evidencing Mr. Rice's a supposed "normal gait." AR 25. In doing so, the ALJ entirely fails to mention the numerous exam notes recounting the treating physician's observation of antalgic gait. See, e.g., AR 274, 290, 304-306.

In short, the ALJ persistently misstated and mischaracterized evidence to 'support' her unfounded determinations about the credibility of Mr. Rice's claims regarding severity of symptoms. The other notable defect in the ALJ's discussion of claimant credibility is her complete failure to mention Mr. Rice's Hepatitis B. Again, Mr. Rice expressly testified that the symptoms are so severe that at least one day a week he is unable to even get out of bed. The ALJ makes absolutely no mention of his testimony, which is entirely consistent with Dr. McMullin's opinion that Mr. Rice would miss at least one day a month of work.AR333. In sum, the ALJ's adverse findings with regard to Mr. Rice's credibility suffer from the same defect as so many other of her findings: the ALJ committed reversible error by: "reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result." *Gallant v. Heckler*, supra, 753 F. 2d at 1456.

3.   Disposition

Plaintiff argues the ALJ erred by failing to specify which portions of his testimony were found to be not credible and why. According to plaintiff, the ALJ's "en masse reference to 56 pages of medical records" is insufficient. The court does not agree. In this case, the ALJ stated plaintiff's allegations of disabling sit/stand/walk limitations related to back pain are not credible because they are inconsistent with the limited record of conservative treatment. See CAR 24-25. The ALJ also found plaintiff's allegations of disabling limitations related to back pain are inconsistent with the objective medical evidence showing unremarkable findings on examination. See id. at 25-26. Contrary to plaintiff's assertion the ALJ referenced the medical record "en masse" to support her credibility determination, a review of the hearing decision reflects the ALJ discussed specific medical evidence in detail and in relation to the specific sit/stand/walk limitations claimed by plaintiff.

Plaintiff also argues the ALJ erred by stating a March 2014 x-ray study showed no worsening. While plaintiff is correct the report of the x-ray study does not mention worsening, nor could it because there were no comparison studies available, plaintiff has not explained how this misstatement of the evidence constitutes error given the conclusion expressed in the same

26

report the x-rays showed no more than mild diffuse changes. <u>See</u> CAR 274. The court notes plaintiff has not pointed to evidence of record showing his condition did in fact worsen. To the contrary, the court's review of the record reflects a stable condition well-controlled with conservative and minimal treatment.

Next, plaintiff argues the ALJ further misstated the record by noting Dr. McMullin's observation plaintiff had, at the time of his treatment note, the "potential to work again as a D&A [drug and alcohol] counselor without any heavy lifting and bending (Exhibit 1F/7, 3F/10)." According to plaintiff: "In truth, 'Exhibit 1F/7' (AR 274) makes no mention of Mr. Rice working as a drug and alcohol counselor. . . ." Plaintiff's argument is unpersuasive because it is plaintiff – not the ALJ – who misstates the evidence. Plaintiff presumes the ALJ incorrectly stated Dr. Mullin noted plaintiff was presently working at the time. Not so. The ALJ clearly and accurately described Dr. McMullin's statement as to plaintiff's "potential" to work "again" in the future. <u>See</u> CAR 274 (Exhibit 1F).

Finally, plaintiff contends the ALJ erred by stating the record shows plaintiff has "normal gait" because the record documents observations of an antalgic gait. The court finds no error because the ALJ's reference to findings of normal gait were specific to and accurately describe the findings at Exhibit 5F, page 10, cited by the ALJ. <u>See</u> CAR 326. Though the record indeed contains references to an antalgic gait – a fact which the ALJ somewhat disingenuously does not discuss – plaintiff has not explained how the omission constitutes error. Central to the ALJ's credibility analysis is reliance on the opinion of Dr. Kyle, who reviewed the record, including records showing an antalgic gait during some but not all examinations by plaintiff's treating sources, observed a normal gait on his own examination, and found plaintiff is capable of exertional activities consistent with medium work. As discussed above, the court finds no error in the ALJ's reliance on Dr. Kyle's opinions. Thus, whether plaintiff's gait is more accurately described as normal or antalgic, the credited opinion evidence of record supports the ALJ's credibility determination that plaintiff's subjective complaints are not supported by the objective evidence as a whole.

/ / /

### E. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff contends:

> ALJ's must ensure that the record as a whole is "complete and detailed enough" to support their determinations. 20 C.F.R. § 404.1513(e)(1)-(3). This requires seeking additional evidence to clarify inconsistencies, ambiguities, and conflicts in the record. § 404.1513(e)(1). An ALJ errs by rejecting a medical assessment without having first sought to fully develop the factual and medical record. *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir.1999). The ALJ cannot reject a treating physician's diagnosis (as she did here) without first attempting to fill any clear gaps in the administrative record. *Rosa*, supra, 168 F.3d at 80 (citing and quoting *Clark v. Comm'r of Social Sec*., 143 F. 3d 115,118 (2nd Cir. 1998); see also *Calzada v. Astrue*, 753 F.Supp.2d 250, 278 (S.D.N.Y.2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the Dr.'s opinion."). Here, the ALJ specifically found that Dr. McMullin's Source statement was "not supported or consistent with his longitudinal treatment records" and she should have tried to resolve this supposed inconsistency by requesting clarification from Dr. McMullin. This failure alone suffices to reverse. However, in the case at bar the ALJ's failure to fully develop the record goes far beyond merely failing to clarify ambiguities.
>
> In an April 9, 2014 note that is part of the initial decision, non-treating, non-examining state agency physician Dr. Hanna expressly stated that: "Would prefer IMCE. With question of hepatitis, ortho CE would only examine j[oi]nts and not comment on stigmata of hepatitis." AR 67. Dr. Hannah's fears were certainly justified; the April 26, 2014 'IME' by Dr. Kyle made a passing reference to the existence of Mr. Rice's Hepatitis B but made no effort to discuss or quantify its impact on his ability to work. The ALJ's failure to further develop the record on hepatitis-related

issues despite Dr. Hanna's expressly stated need for such information was manifestly error. That error cannot possibly be characterized as "harmless" because blood tests taken less than a year after the ALJ's decision diagnosed Mr. Rice with a cirrhotic liver. See AR 367. (footnote omitted).

Plaintiff's arguments are unpersuasive because he does not point to any ambiguous or inadequate evidence not already developed in the record. Plaintiff first argues the ALJ should have developed the record further in light of the ALJ's finding Dr. McMullin's opinions are not consistent with the doctor's own objective observations. The court does not agree. The ALJ's finding the doctor's opinion is not supported by objective evidence is not the same as finding Dr. McMullin's opinion is ambiguous or inadequate. To the contrary and as discussed above, the record was sufficient for the ALJ to conclude Dr. McMullin's opinion was not supported by the doctor's objective findings.

Plaintiff also argues the ALJ's duty to develop the record was not met after Dr. Hanna stated on April 9, 2014, a preference for a consultative examination. The court finds no error for the simple reason a consultative examination was in fact performed per Dr. Hanna's recommendation by Dr. Kyle on April 26, 2014. Plaintiff's argument is somewhat puzzling given he acknowledges this fact. In any event, plaintiff's disagreement with Dr. Kyle's opinions or the ALJ's reliance on them does not render the evidence either ambiguous or inadequate.

## F.    **Vocational Expert Testimony**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the

Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[4] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

/ / /

/ / /

/ / /

---

[4] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ concluded plaintiff is able to perform other jobs that exist in significant numbers in the national economy.  See CAR 26-27.  In doing so, the ALJ found the Grids inapplicable and relied on testimony from a vocational expert.  See id.  The ALJ stated:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.25. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. At the hearing, the vocational expert testified that given all of these factors, there were significant numbers of other jobs available that the claimant could perform with the residual functional capacity discussed above (Hearing Testimony, 09/16/2015). Furthermore, the claimant's attorney testified that he would stipulated [sic] that there would be [] substantial

amount of medium exertional jobs available in the economy (Hearing Testimony, 09/16/2013).

The Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the following hypothetical: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 2 hours in an 8-hour workday; sit for hours in an 8-hour workday; must change postural positions every 30 minutes; never climb ladders, ropes and scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a telemarketer cashier II (DOT 211.462-010, light, SVP 2) jobs of which there are 82,000 nationally after 90% erosion in the job numbers; small products assembler (DOT 706.684-022, light, SVP 2) jobs of which there are 20,000 nationally after 90% erosion in the job numbers; and telephone solicitor (DOT 299.357-014, light, SVP 3 but most jobs were SVP 2) jobs of which there are 160,000 nationally (Hearing Testimony, 09/16/2015). The regulatory requirements of 20 CFR 416.967 state that if a person can perform medium level work, then light and sedentary level work can also be performed.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert and stipulation by the claimant's attorney, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 26-27.

At the outset, the court observes the ALJ's hearing decision recites only a hypothetical for light work (i.e., 10/20 lb. lift/carry ability), and the vocational expert testified as to a number of light jobs plaintiff can perform. See CAR 27. Nonetheless, the transcript of the hearing reflects the ALJ also posited a hypothetical consistent with Dr. Kyle's opinion plaintiff can perform medium work (i.e., 25/50 lb. lift/carry ability). See id. at 57-60. It is clear the ALJ relied on the vocational expert's testimony based on a hypothetical consistent with medium work, and plaintiff stipulated at the hearing that a significant number of jobs exists in the national economy a person capable of medium work consistent with Dr. Kyle's opinions can perform. See id. at 58. Plaintiff makes no argument with respect to the ALJ's omission from the hearing decision a description of the vocational expert testimony upon which the ALJ ultimately relied.

32

Plaintiff argues:

> At hearing the ALJ posited hypotheticals based on the report and findings of Dr. Kyle, including 50/25 lift, carry, pull, etc. and the VE testified (AR 57-58) that there would be numerous jobs in the national economy based on that hypothetical, and the ALJ's decision correctly states that Mr. Rice's attorney stipulated that "there would be substantial amount of medium exe1tional [sic] jobs available." AR 27. The ALJ also posited a hypothetical based on the limitations stated by Dr. Hanna (20/10 lift/carry/push/pull, etc.), and the VE again opined that there were numerous jobs in the national economy given that hypothetical. AR 59-60. However, when the ALJ added just one of the limitations identified by Dr. McMullin, the need for a 10 minute 'move around' break every hour, the VE testified that there would be no jobs available. AR 60-61. In addition, when Mr. Rice's attorney asked the VE what the effect would be of an employee missing one day a month, consistently each month (a limitation identified by Dr. McMullin and uncontroverted by any medical source), the VE testified that such an employee would be terminated "during the trial period." AR 61. When the ALJ tried to avoid the implications of that testimony by positing a hypothetical in which the employee did not begin missing one day a month until after the trial period, the VE testified unequivocally that: "Employers are going to start giving them warnings and at the third or fourth, they're going to terminate them." AR 62. The ALJ stated that she would "consider that" but in fact her decision makes absolutely no reference to either of the latter two opinions by the VE. See AR 26-27. There are several flaws in the ALJ's decision in this regard.
> First, to the extent that it relies on the VE's testimony in response to the ALJ's first hypothetical, which was based on limitations established by Dr. Kyle's opinions, those opinions have no credibility whatsoever, for the reasons discussed in § 8.3, above. The second hypothetical, based on the limitations identified by Dr. Hanna, has some validity, but Dr. Hannah failed to consider or discuss the additional limitations identified in Dr. McMullin's Source Statement. When those limitations were considered by the VE, she repeatedly testified that either there would be no jobs available (because of Mr. Rice's need to 'move about' for 10 minutes each hour) or that Mr. Rice would be terminated from any employment because of the one day each month absences inevitably flowing from Mr. Rice's back problems). It must be noted, once again, that those two limitations identified by Dr. McMullin were not challenged by any medical provider, were based on objective medical evidence such as back x-rays and were entirely consistent with all the medical evidence, except of course for Dr. Kyle's examiner's report. Under the circumstances, the ALJ's finding of numerous available jobs cannot be sustained.

Plaintiff's vocational arguments are all premised on arguments relating to the ALJ's evaluation of the medical opinion evidence, specifically the opinions of Drs. Hanna, McMullin, and Kyle. According to plaintiff, the ALJ erred at Step 5 because she relied on the vocational expert's answers to hypothetical questions which did not accurately describe plaintiff's residual functional capacity given the ALJ's misevaluation of these doctors' medical opinions.

/ / /

33

Because the court finds no error with respect to the ALJ's evaluation of the medical opinions, plaintiff's arguments at Step 5 are unpersuasive.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for summary judgment (Doc. 17) is denied;

2.     Defendant's motion for summary judgment (Doc. 20) is granted;

3.     The Commissioner's final decision is affirmed; and

4.     The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 28, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE